IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVIE COOPER, #7743 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:06-CV-418-MHT |
| ) | |
| D.T. MARSHAL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' SPECIAL REPORT AND ANSWER

Defendants, Melodye Miller, Kenneth Nichols, M.D., Donna Couey, LPN (identified in the plaintiff's Amended Complaint as "Medical Nursing Supervisor") and Gail Colburn, LPN (identified in the plaintiff's Amended Complaint as "Medical Nursing Supervisor")[1] submit their Special Report and Answer to the Court as follows:

### I.   INTRODUCTION

The plaintiff filed his Complaint on May 9, 2006 and has filed various amended complaints. On June 16, 2006, this Court ordered Defendants to file an Answer and Special Report by July 26, 2006 concerning the factual allegations made by the plaintiff in his Complaint and amendments thereto.

### II.   PLAINTIFF'S ALLEGATIONS

The plaintiff alleges that the Defendants failed to provide adequate or appropriate medical attention in violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual

---

[1] Plaintiff has asserted claims against a defendant he identifies as "medical nursing supervisor." Because Donna Couey, LPN and Gail Colburn, LPN both served as medical team administrator of the Montgomery County Jail during the times alleged by the plaintiff in his complaint, as amended, both Colburn and Couey are responding to the allegations levied against the "medical nursing supervisor."

punishment. Specifically, the plaintiff alleges that Melodye Miller, RN (hereinafter "Nurse Miller") Gail Colburn, LPN (hereinafter "Nurse Colburn"), Donna Couey, LPN (hereinafter "Nurse Couey") and Kenneth Nichols, M.D. (hereinafter "Dr. Nichols") were deliberately indifferent to the plaintiff's heart and prostate conditions. The plaintiff claims that he did not receive medication on April 8, 2006 and April 9, 2006, was denied adequate medical attention from May 11, 2006 to May 16, 2006, and has been denied prostate and heart surgery which he claims is indicated.[2]

## III. DEFENDANTS' ANSWER TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by the plaintiff as said allegations are untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the plaintiff of any right to which he was entitled. The plaintiff's Complaint fails to state a claim upon which relief can be granted. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, the plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the law.

## IV. SWORN STATEMENTS

Pursuant to Paragraph 2 of the Court's Order, Defendants submit the affidavits of Dr. Nichols (Exhibit 1), Nurse Colburn (Exhibit 2), and Nurse Couey (Exhibit 3), who are persons having knowledge of the subject matter of the Complaint. Defendants also submit the affidavit of Nurse Miller (Exhibit 4), who testifies that she was not working at the Montgomery County Jail during the time of the plaintiff's incarceration. Finally, Defendants refer the Court to all affidavits and

---

[2] This statement of the plaintiff's allegations is based upon the plaintiff's Complaint as amended and the undersigned's interpretation of the issues raised. If other issues are presented, Defendant requests that this Honorable Court grant Defendants an opportunity to answer and address those issues.

2

evidentiary materials submitted by the Co-Defendants which demonstrate that the plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act.

## V. STATEMENT OF FACTS

### A. Background

1. Dr. Nichols obtained his medical degree from UAB in 1982. From 1982 to 1985, he performed an internal medicine internship and residency at Baptist Memorial Hospital in Memphis, Tennessee. From July 1985 to the present, he has been in private practice in internal medicine in Prattville, Alabama. He is licensed by the State of Alabama as a medical doctor and has been so since 1985. Since 2004, he has been employed by Southern Health Partners, Inc. ("SHP") as the medical director of the Montgomery County Jail. (Nichols Aff. at ¶ 2.)

2. Nurse Colburn obtained her LPN degree from Northwest Community College in Hamilton, Alabama in 1991. From 1999 to 2001, she was employed as an LPN at Limestone Correctional Facility in Capshaw, Alabama. In 2001, she worked part-time as an LPN for Southern Health Partners, Inc. ("SHP") in Huntsville and Decatur, Alabama. In 2001, she worked as an LPN at Eglin Air Force Base, Fort Walton Beach, Florida. From 2003 to 2005, she was employed with the Medical Staffing Network as an LPN. In 2005, she was employed as an LPN for two months with PHS at the Okaloosa County Jail in Crestwood, Florida. On November 1, 2005, she was employed again by SHP as the medical team administrator at the Autauga County Metro Jail. On May 9, 2006, she became the medical team administrator at the Montgomery County Jail in Montgomery, Alabama. (Colburn Aff. at ¶ 2.)

3. Nurse Couey obtained her LPN degree from Calhoun Community College in 1999. She worked at Hearthstone Assisted Living Center in Huntsville, Alabama from 1999 to 2000

as an LPN. She worked at the Limestone Correctional Center in Capshaw, Alabama from 2000 to 2001. She became employed as an LPN for SHP in 2002. From 2002 to 2004, she worked for SHP as an LPN for the Madison County Jail in Huntsville, Alabama. From 2004 through March 2006, she worked for SHP as a travel nurse, performing nursing duties at every jail where SHP has a contract. From March 1, 2006 through May 9, 2006, she was the medical team administrator for the Montgomery County Jail. Since May 9, 2006, she has been employed by SHP on an as needed basis. (Couey Aff. at ¶ 2.)

4. Nurse Miller obtained her Bachelors of Science in nursing at Troy State University in 2002 and has been licensed by the State of Alabama as a registered nurse since 2002. From 2002 to 2004, she worked as a registered nurse on the pediatric floor of Baptist Medical Center South in Montgomery, Alabama. From July 2004 to May 2005, she was employed as a registered nurse for Dr. Jim Carlisle, at the All About Kids facility. From May 2005 to February 28, 2006, she was the medical team administrator for SHP at the Montgomery County Jail. (Miller Aff. at ¶ 2.)

5. The plaintiff was not booked into the Montgomery County Jail until April 8, 2006. (Couey Aff. at ¶ 8.) Since Nurse Miller's last day of work at SHP was February 28, 2006, she was not working at the Montgomery County Jail during the time from which plaintiff's claims arise. (Miller Aff. at ¶ 3.)

6. SHP provides medical care to inmates in various jail facilities, including the Montgomery County Jail. During the entire time of plaintiff's incarceration in the Montgomery County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Montgomery County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period

complained of by the plaintiff in this action, Dr. Nichols was the medical director in the jail. During this time frame, Nurse Couey was the medical team administrator ("MTA") through May 9, 2006 and, thereafter, Nurse Colburn became the MTA. (Nichols Aff. at ¶ 3; Colburn Aff. at ¶ 3; Couey Aff. at ¶ 3.)

7. When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit. (Nichols Aff. at ¶ 4; Colburn Aff. at ¶ 4; Couey Aff. at ¶ 4.)

**B.     Chronology of the plaintiff's treatment**

8. A true and correct copy of SHP's medical chart concerning the plaintiff is attached to Nurse Colburn's Affidavit as Exhibit A. (Colburn Aff. at ¶ 6.)

9. The plaintiff was booked into the Montgomery County Jail on April 8, 2006. On April 9, 2006, Rosie Orum, R.N., completed a history and physical form on the plaintiff. The plaintiff indicated that he had been hospitalized in the past at North Broward Hospital, Pompano Beach, Florida in 2006, Saint Margaret in 1981 for open heart surgery, and Saint Francis Hospital in 1993. He gave a history of problems with vision, nervous disorder, pneumonia, heart, bladder infection, trouble voiding, gonorrhea and syphilis. On physical exam, Ms. Orum noted that the plaintiff had an abrasion on his left arm, that he had reading plus regular eyeglasses, that he had heart palpitations sometimes and a prostate problem with frequency and urgency. He identified his current medications as aspirin (for heart), Cardura (for prostrate) and Seroquel (for psychiatric condition). (Nichols Aff. at ¶ 7; Colburn Aff. at ¶ 7; Couey Aff. at ¶ 7.)

10. Later on April 9, 2006, Dr. Nichols ordered that the plaintiff continue to receive Seroquel, aspirin and Doxacosin (also called Cardura). (Nichols Aff. at ¶ 8; Colburn Aff. at ¶ 8; Couey Aff. at ¶ 8.)

11. On April 10, 2006, Dr. Nichols ordered that the plaintiff receive a chest x-ray, which was done on the same day. The chest x-ray revealed that the plaintiff had no acute pulmonary disease. (Nichols Aff. at ¶ 9; Colburn Aff. at ¶ 9; Couey Aff. at ¶ 9.)

12. On April 17, 2006 at 3:00 p.m., the plaintiff presented to the medical unit complaining of shortness of breath. He was seen by Caroline Dees, LPN. On examination, no respiratory distress was noted. He complained of a non-productive cough, stating "he had cough prior to coming to jail." The plaintiff denied any other complaints at that time, and Ms. Dees noted that he was scheduled to see Dr. Nichols on April 18, 2006. She also recorded that no acute distress was noted. (Nichols Aff. at ¶ 10; Colburn Aff. at ¶ 10; Couey Aff. at ¶ 10.)

13. Later on April 17, 2006, at 6:40 p.m., the plaintiff again presented to the medical unit complaining of shortness of breath and chest soreness. He was seen by Keisha Williams, LPN, who noted the plaintiff stated that he had to have some valves replaced but refuses to do so "because he didn't want to be used as a ginnie pig + people knowing his thoughts because of the wires that he has." On examination, Ms. Williams noted that the plaintiff presented with neither labored nor rapid respirations and that he was breathing with ease at rest. She noted no coughing and also recorded that the plaintiff would be on the M.D. list to see Dr. Nichols. (Nichols Aff. at ¶ 11; Colburn Aff. at ¶ 11; Couey Aff. at ¶ 11.)

14. On April 17, 2006, Dr. Nichols ordered that the plaintiff receive Decongestine for his complaints of congestion and Guafenisex for cough. (Nichols Aff. at ¶ 12; Colburn Aff. at ¶ 12; Couey Aff. at ¶ 12.)

15. On April 18, 2006, the plaintiff was seen by Dr. Nichols. Dr. Nichols noted that the plaintiff stated he was supposed to have had his third heart surgery on April 6, 2006 but did not have it done because "people were persecuting him." The plaintiff said that he had occasional tightness in his chest and shortness of breath. Dr. Nichols noted the plaintiff was on Cardura, aspirin and Seroquel prior to becoming incarcerated and that he had received a chest x-ray on April 10, 2006. Dr. Nichols assessed the plaintiff as status-post aortic valve replacement with dyspnea. Dr. Nichols noted that the plaintiff had no signs of chronic heart failure. Dr. Nichols' plan was to get the records from Baptist South Hospital, and he prescribed Maxzide for the plaintiff's blood pressure. (Nichols Aff. at ¶ 13; Colburn Aff. at ¶ 13; Couey Aff. at ¶ 13.)

16. On April 25, 2006, Dr. Nichols again saw the plaintiff, and the plaintiff complained of frequent urination. Dr. Nichols noted that the patient was receiving Cardura 2 mgs. in the morning for his prostate complaints, and Dr. Nichols increased his Cardura dose to 2 mgs. twice a day for two days and then 4 mgs. twice a day. (Nichols Aff. at ¶ 14; Colburn Aff. at ¶ 14; Couey Aff. at ¶ 14.)

17. On April 28, 2006, the plaintiff received a psychiatry consult from Dr. Sanders, wherein Dr. Sanders noted that the plaintiff reported a history of paranoid schizophrenia and that he was on Seroquil 200 mgs. twice a day. Dr. Sanders ordered that the plaintiff receive Triavil for his psychiatric condition, which would replace the non-formulary drug, Seroquil. (Nichols Aff. at ¶ 15; Colburn Aff. at ¶ 15; Couey Aff. at ¶ 15.)

18. On June 7, 2006, the plaintiff completed a sick call slip, complaining of chest pain beginning on June 5, 2006 and that he believed he needed a third heart surgery. An appointment was made for the plaintiff to see the medical staff, and the plaintiff refused to come to the medical department. The plaintiff's June 7, 2006 sick call slip is the only sick call slip he has completed while an inmate at the Montgomery County Jail. (Nichols Aff. at ¶ 16; Colburn Aff. at ¶ 16; Couey Aff. at ¶ 16.)

19. With regard to the plaintiff's complaint that he did not receive adequate treatment on April 8 or April 9, 2006 or between May 11 and May 16, 2006, the plaintiff completed no sick call slips during any of these days. Moreover, the plaintiff was given a history and physical on April 9, 2006, and all prescribed medications were administered to the plaintiff on a regular basis beginning on April 9, 2006. (Nichols Aff. at ¶ 17; Colburn Aff. at ¶ 17; Couey Aff. at ¶ 17.)

20. On May 13, 2006, the plaintiff completed a grievance form (Exhibit B to Colburn Aff.), wherein he complained that he was not receiving his prostate medication (Cardura). The plaintiff also mentioned that there had been no response from Dr. Nichols upon receipt of the Baptist Hospital medical records. Nurse Colburn responded to this grievance on May 15, 2006, stating that the plaintiff's Cardura had been increased to 4 mgs. twice a day. She noted that the medical staff had ordered the plaintiff's Cardura and that he would receive it as soon as it came in. A review of the plaintiff's medication administration record shows that the plaintiff did not receive his p.m. dosage of Cardura on May 13 and 14, 2006, but the administration of those dosages commenced again on May 15, 2006 and continued thereafter on a regular basis. She also noted that she would have Dr. Nichols look at the records and decide what treatment was needed. Nurse

Colburn's response to the plaintiff's grievance is attached as Exhibit C to her affidavit. (Nichols Aff. at ¶¶ 18-19; Colburn Aff. at ¶ 18; Couey Aff. at ¶ 18.)

21.     Dr. Nichols has reviewed all of the plaintiff's records that were sent to the Montgomery County Jail from Baptist Hospital in Montgomery, Alabama. Based upon his review of those records, his treatment of the plaintiff and his education and training, it is Dr. Nichols' opinion that the plaintiff does not currently need prostate or heart surgery. The plaintiff suffers from moderate aortic and atrial insufficiency, and this condition may result in the need for surgery at some point in the future. However, it is Dr. Nichols' opinion that surgery is not currently indicated. (Nichols Aff. at ¶ 20.)

### C.     Defendants were not deliberately indifferent to the plaintiff's medical needs.

22.     All necessary care provided to the plaintiff was appropriate, timely and within the standard of care. (Nichols Aff. at ¶ 21; Colburn Aff. at ¶ 20; Couey Aff. at ¶ 20.)

23.     On no occasion was the plaintiff ever at risk of serious harm, nor were Dr. Nichols, Nurse Colburn, Nurse Couey or anyone on the SHP medical staff ever indifferent to any complaint that he made. (Nichols Aff. at ¶ 22; Colburn Aff. at ¶ 21; Couey Aff. at ¶ 21.)

### D.     The plaintiff failed to exhaust administrative remedies.

24.     The plaintiff has failed to allege that he pursued a claim with the Alabama State Board of Adjustment pursuant to Ala. Code ¶ 41-9-60, *et seq.*, prior to commencing this lawsuit. (See Complaint, as amended). Defendants adopt any and all facts set out by Co-Defendants in their Special Report which establish that the plaintiff failed to exhaust administrative remedies.

## VI. LEGAL ARGUMENT

### A. The plaintiff's claims against Dr. Nichols, Nurse Colburn and Nurse Couey are due to be dismissed, because the plaintiff has presented no evidence that Defendants were deliberately indifferent to a serious medical condition.

In order to prevail under 42 U.S.C. § 1983 on his medical claim, the plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Kelley v. Hicks*, 400 F. 3d 1282, 1284 n. 3 (11th Cir. 2005). Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

Indeed, in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the United States Supreme Court held that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Thus, the inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." (*Id.* at 105-06.) Instead, it must be shown that there was a "deliberate indifference" to the serious medical needs of a prisoner. (*Id.* at 104.)

In addition, an inmate does not have a right to a ***specific*** kind of medical treatment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such***

10

***treatment is not a federal constitutional question***") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the plaintiff. See *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although the plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

In this case, there is absolutely no evidence from which a jury could find that Dr. Nichols, Nurse Colburn or Nurse Couey acted with deliberate indifference to any serious medical need of the plaintiff. On the contrary, the plaintiff's medical chart clearly demonstrates that all of his medical needs were addressed in a timely and appropriate fashion. The plaintiff's prostate and heart conditions were treated with medication prescribed by Dr. Nichols on a regular basis. Moreover, Dr. Nichols has reviewed the plaintiff's records from Baptist Hospital, and--based upon his medical training, his review of those records and his assessment of the plaintiff,--he does not believe that heart surgery or prostate surgery is currently indicated. (Nichols Aff. at ¶ 20.) The plaintiff has failed to present any medical testimony or other medical evidence demonstrating that he currently needs heart and/or prostate surgery.

11

Dr. Nichols, Nurse Colburn and Nurse Couey have testified that all necessary care provided to the plaintiff was appropriate, timely and within the standard of care. (Nichols Aff. at ¶ 21; Colburn Aff. at ¶ 20; Couey Aff. at ¶ 20.) The plaintiff has failed to present any evidence or medical testimony rebutting this testimony and, in fact, has presented no evidence that the treatment provided him by said Defendants was somehow indifferent to his needs.

### B. The plaintiff's claims against Nurse Miller are due to be dismissed, because Nurse Miller was not and has not worked at the Montgomery County Jail during any part of the plaintiff's incarceration.

As set out in Nurse Miller's Affidavit, her last day of work for SHP at the Montgomery County Jail was February 28, 2006. (Miller Aff. at ¶¶ 2-3.) Since the plaintiff was not booked into the jail until April 8, 2006, Nurse Miller was not working at the Montgomery County Jail during any part of the plaintiff's incarceration. As such, any claims against Nurse Miller are due to be dismissed.

### C. The plaintiff's claims are barred by the Prison Litigation Reform Act for his failure to exhaust administrative remedies.

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Defendants, Dr. Nichols, Nurse Colburn, Nurse Couey and Nurse Miller hereby adopt any and all evidence submitted by Co-Defendants showing that the plaintiff failed to exhaust administrative remedies under the Alabama Prison Litigation Reform Act. Moreover, the plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See *Brown v. Tombs*, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

Because the plaintiff failed to exhaust all administrative remedies, the plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See *Alexander v. Hawk*, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

## VII.  REQUEST THAT SPECIAL REPORT BE TREATED AS MOTION FOR SUMMARY JUDGMENT.

### A.  Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants move this Court to enter summary judgment in their favor, because, as is more particularly shown above, there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

On a motion for summary judgment, the court should view the evidence in a light most favorable to the nonmovant, However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence

13

supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves,* 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299. "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" *Marsh v. Butler County,* 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (*en banc*) quoting *Massachusetts School of Law v. American Bar,* 142 F.3d 26, 40 (1st Cir. 1998).

**B.   Motion for Summary Judgment**

Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

_____
Daniel F. Beasley (BEA059)
Robert N. Bailey, II (BAI045)
Attorneys for Defendants

**OF COUNSEL:**
LANIER FORD SHAVER & PAYNE P.C.
200 West Side Square, Suite 5000
Huntsville, AL 35801
(256) 535-1100

CERTIFICATE OF SERVICE

I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-CM/ECF participant on this the 26th day of July, 2006:

Davie Cooper
Montgomery County Detention Facility
P.O. Box 4599
Montgomery, AL 36103

_____
Of Counsel

14