IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVIE COOPER, #7743 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:06-CV-418-MHT |
| | ) |
| D.T. MARSHAL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF KENNETH NICHOLS, M.D.

Before me, the undersigned notary public, in and for said County and State, personally appeared **Kenneth Nichols, M.D.**, who, after first being duly sworn by me, deposes and states as follows:

1. My name is Kenneth Nichols, M.D. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2. I obtained my medical degree from UAB in 1982. From 1982 to 1985, I performed an internal medicine internship and residency at Baptist Memorial Hospital in Memphis, Tenneessee. From July 1985 to the present, I have been in private practice in internal medicine in Prattville, Alabama. I am licensed by the State of Alabama as a medical doctor and have been so since 1985. Since 2004, I have been employed by Southern Health Partners, Inc. ("SHP") as the medical director of the Montgomery County Jail.

3. SHP provides medical care to inmates in various jail facilities, including the Montgomery County Jail. During the entire time of plaintiff's incarceration in the Montgomery County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Montgomery County Commission. Health care in the jail is provided under

the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action, I was the medical director in the jail. During this time frame, Donna Couey was the medical team administrator ("MTA") through May 9, 2006 and, thereafter, Gail Colburn became the MTA.

4. When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

5. As I understand the plaintiff's complaint, the plaintiff alleges that Gail Colburn, Donna Couey, Melodye Miller and myself were deliberately indifferent to the plaintiff's heart and prostate conditions. Specifically, I understand that the plaintiff claims that he did not receive medication on April 8, 2006 and April 9, 2006, was denied adequate medical attention from May 11, 2006 to May 16, 2006, and has been denied prostate and heart surgery which he claims is indicated.

6. I have reviewed SHP's entire medical chart on the plaintiff.

7. The plaintiff was booked into the Montgomery County Jail on April 8, 2006. On April 9, 2006, Rosie Orum, R.N., completed a history and physical form on the plaintiff. The plaintiff indicated that he had been hospitalized in the past at North Broward Hospital, Pompano Beach, Florida in 2006, Saint Margaret in 1981 for open heart surgery, and Saint Francis Hospital in 1993. He gave a history of problems with vision, nervous disorder, pneumonia, heart, bladder infection, trouble voiding, gonorrhea and syphilis. On physical exam, Ms. Orum noted that the plaintiff had an abrasion on his left arm, that he had reading plus regular eyeglasses, that he had heart palpitations sometimes and a prostate problem with frequency and urgency. He listed his current medications as aspirin (for heart), Cardura (for prostate) and Seroquel (for psychiatric condition).

8. Later on April 9, 2006, I ordered that the plaintiff continue to receive Seroquel, ASA and Doxacosin (also called Cardura).

9. On April 10, 2006, I ordered that the plaintiff receive a chest x-ray, which was done on the same day. The chest x-ray revealed that the plaintiff had no acute pulmonary disease.

10. On April 17, 2006 at 3:00 p.m., the plaintiff presented to the medical unit complaining of shortness of breath. He was seen by Caroline Dees, LPN. On examination, no respiratory distress was noted. He complained of a non-productive cough, stating "he had cough prior to coming to jail." The plaintiff denied any other complaints at that time, and Ms. Dees noted that he was scheduled to see me on April 18, 2006. She also recorded that no acute distress was noted.

11. Later on April 17, 2006, at 6:40 p.m., the plaintiff again presented to the medical unit complaining of shortness of breath and chest soreness. He was seen by Keisha Williams, LPN, who noted the plaintiff stated that he had to have some valves replaced but refuses to do so "because he didn't want to be used as a ginnie pig + people knowing his thoughts because of the wires that he has." On examination, Ms. Williams noted that the plaintiff presented with neither labored nor rapid respirations and that he was breathing with ease at rest. She noted no coughing and also recorded that the plaintiff would be on the M.D. list to see me.

12. On April 17, 2006, I ordered that the plaintiff receive Decongestine for his complaints of congestion and Guafenisex for cough.

13. On April 18, 2006, the plaintiff was seen by me. I noted that the plaintiff stated he was supposed to have had his third heart surgery on April 6, 2006 but did not have it done because "people were persecuting him." The plaintiff said that he had occasional tightness in his chest and shortness of breath. I noted the plaintiff was on Cardura, aspirin and Seroquel prior to becoming

incarcerated and that he had received a chest x-ray on April 10, 2006. I assessed the plaintiff as status-post aortic valve replacement with dyspnea. I noted that the plaintiff had no signs of chronic heart failure. My plan was to obtain the records from Baptist South Hospital, and I prescribed Maxzide for the plaintiff's blood pressure.

14. On April 25, 2006, I again saw the plaintiff, and the plaintiff complained of frequent urination. I noted that the patient was receiving Cardura 2 mgs. in the morning for his prostate complaints, and I increased his Cardura dose to 2 mgs. twice a day for two days and then 4 mgs. twice a day.

15. On April 28, 2006, the plaintiff received a psychiatry consult from Dr. Sanders, wherein Dr. Sanders noted that the plaintiff reported a history of paranoid schizophrenia and that he was on Seroquil 200 mgs. twice a day. Dr. Sanders ordered that the plaintiff receive Triavil for his psychiatric condition, which would replace the non-formulary drug, Seroquil.

16. On June 7, 2006, the plaintiff completed a sick call slip, complaining of chest pain beginning on June 5, 2006 and that he believed he needed a third heart surgery. An appointment was made for the plaintiff to see the medical staff, and the plaintiff refused to come to the medical department. The plaintiff's June 7, 2006 sick call slip is the only sick call slip he has completed while an inmate at the Montgomery County Jail.

17. With regard to the plaintiff's complaint that he did not receive adequate treatment on April 8 or April 9, 2006 or between May 11 and May 16, 2006, the plaintiff completed no sick call slips during any of these days. Moreover, the plaintiff was given a history and physical on April 9, 2006, and it appears that all prescribed medications were administered to the plaintiff on a regular basis beginning on April 9, 2006.

18. On May 13, 2006, the plaintiff completed a grievance form, wherein he complained that he was not receiving his prostate medication. Gail Colburn responded to this grievance on May 15, 2006, stating that the plaintiff's Cardura had been increased to 4 mgs. twice a day. She noted that the medical staff had ordered the plaintiff's Cardura and that he would receive it as soon as it came in. A review of the plaintiff's medication administration record shows that the plaintiff did not receive his p.m. dosage of Cardura on May 13 and 14, 2006, but the administration of those dosages commenced again on May 15, 2006 and continued thereafter on a regular basis.

19. In his grievance, the plaintiff mentioned that there had been no response from me since receipt of the Baptist Hospital records. In Nurse Colburn's response to the plaintiff's grievance, she noted that she would have me look at the records and decide what treatment was needed.

20. I have reviewed all of the plaintiff's records that were sent to the Montgomery County Jail from Baptist Hospital in Montgomery, Alabama. Based upon my review of those records, my treatment of the plaintiff and my education and training, it is my opinion that the plaintiff does not currently need prostate or heart surgery. The plaintiff suffers from moderate aortic and atrial insufficiency, and this condition may result in the need for surgery at some point in the future. However, it is my opinion that surgery is not currently indicated.

21. All necessary care provided to the plaintiff by me and by the SHP medical staff was appropriate, timely and within the standard of care.

22. On no occasion was the plaintiff ever at risk of serious harm, nor was the medical staff ever indifferent to any complaint that he made.

_____
Kenneth Nichols, M.D.


STATE OF ALABAMA )
)
COUNTY OF __Madison__ )

    I, the undersigned Notary Public in and for said county in said state, hereby certify that Kenneth Nichols, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

    GIVEN UNDER MY HAND and official seal on this the __21__ day of __July__, 2006.

_____
Notary Public
My Commission Expires: __12-3-2007__